Arthur C. Maimon, Plaintiff-Appellant, v. Edward M. Telman and Advance Leasing Co., an Illinois Corporation, Defendants-Appellees.

Gen. No. 50,537.

First Judicial District.

October 18, 1967.

Rehearing denied November 16, 1967.

Norman S. Rosen, of Chicago, for appellant.

Marshall & Marshall, of Chicago (Sherwin J. Stone, of counsel), for appellees.

GOLDENHERSH, J.

Plaintiff appeals from the judgment of the Circuit Court of Cook County, entered in plaintiff's suit for declaratory judgment and other relief.

In Count I of his amended complaint, plaintiff alleges the execution of a written agreement and prays for a declaratory judgment holding the agreement to be void by reason of its failure to provide a termination date, or in the alternative that it be declared terminable at will, and that it was terminated upon plaintiff's demand.

The agreement is captioned "Agreement for Joint Venture," and in the preamble recites that it was made and entered into on February 18, 1959, that defendant has been instrumental in organizing an Illinois corporation hereafter referred to as Advance, has subscribed for 40 shares of its capital common stock with a par value

of $100 per share, for which he agreed to pay $7,500, plaintiff is desirous of acquiring an undivided one-half interest in and to said shares of stock, is willing to pay defendant the sum of $3,750 for the half interest, the parties deem it advisable that the interest of plaintiff not appear upon the books or records of the corporation or upon any stock certificates "heretofore issued" to defendant, and states further ". . . they therefore hereby elect to enter into a joint venture agreement with respect to the acquisition of said shares, the ownership thereof, the division of dividends which may hereafter be paid upon said shares, and the distribution of the proceeds in the event that said shares are hereafter sold, redeemed or otherwise disposed of";

The agreement contains the following provisions:

"1.  The parties hereby form a joint venture for the acquisition and ownership of forty (40) shares of the common capital stock of Advance Auto Leasing Company, an Illinois corporation, having a par value of $100.00 per share. It is further agreed that the subscription price for said shares of stock is Seven Thousand Five Hundred Dollars ($7,500.00) and each of the parties hereto agrees to contribute the sum of Three Thousand Seven Hundred and Fifty Dollars ($3,750.00) in payment of said subscription price.

"2.  All dividends, whether in stock or in cash paid upon the aforesaid shares of stock shall be divided equally between the joint venturers. In the event that Telman shall exercise his preemptive rights to acquire any additional shares of stock from said corporation, payment therefor shall be made jointly by the parties hereto and such additional shares of stock, if any, shall be held subject to the terms hereof. In the event of the sale of said shares, the parties hereto shall share equally in the proceeds derived therefrom. It is further agreed that Telman's owner-

ship rights in and to said shares of stock are subject to the terms, covenants and conditions of a certain stock purchase agreement entered into this date by and between Telman and all of the shareholders of said corporation and Maimon hereby acknowledges that a true copy of said stock purchase agreement has been exhibited to him and he does further acknowledge that the rights of the parties hereto are subordinated to the terms of that agreement.

"3.   In the event of the death of either of the parties hereto, the respective estates of the joint venturers shall succeed to the rights, privileges and conditions herein contained.

"4.   The terms of this joint venture agreement shall not extend to or encompass any salaries or bonuses which Telman may hereafter receive as an employee of said corporation.

"5.   This agreement shall not be deemed, held or construed as creating a partnership between the parties hereto and shall be held to apply solely to the purchase, ownership and disposition of the shares of stock hereinabove referred to and shall not include any other transactions heretofore or that may hereafter be entered into by either of the parties and shall not include any business or businesses that either of said parties are now in or that either of said parties may hereafter enter into.

"6.   Telman hereby covenants and agrees that notwithstanding the fact that the said shares of stock shall be issued solely in his name, he shall hold said shares and all rights or interests emanating therefrom in trust for the benefit of the parties hereto.

"7.   This agreement shall be binding upon the parties hereto, their heirs, executors, administrators and assigns."

Count II alleges repeated demands for an "accounting of the financial status" of Advance, and defendant's refusal

to furnish an accounting, alleges plaintiff has no adequate remedy at law, and prays a mandatory injunction directing defendant to deliver a certificate evidencing plaintiff's ownership of 20 shares of the stock.

Count III alleges a conspiracy between defendant and Advance to reduce Advance's earnings and deprive plaintiff of "his justifiable share of the profits." He prays for an accounting of all monies paid defendant and that defendant be required to pay plaintiff "any sums which would justifiably be due to the plaintiff if a proper dividend were declared." He also prays for an order directing Advance to transfer 20 shares of defendant's stock to plaintiff, and deliver to plaintiff a certificate showing the shares to be issued to him.

The testimony is conflicting as to whether defendant solicited plaintiff's participation in the venture, or whether plaintiff approached defendant and asked to purchase an interest in the stock. Plaintiff testified that defendant told him he could have his stock at any time, which defendant denies.

The testimony shows that there was no written agreement in the early stages of the transaction. The first written evidence of plaintiff's interest in the stock is a letter written by defendant to plaintiff in September 1959, "confirming" plaintiff's ownership of a one-half interest in the stock, and all gains and losses, and that "the stock shall be voted with Mr. Telman's as an entity." The formal agreement between the parties, although dated February 18, 1959, was prepared and executed in December of 1960.

There is testimony that Advance had made an election under Subchapter S of the Internal Revenue Code (26 USCA 1371, et seq.), and testimony with respect to defendant's income tax credits and liabilities by reason thereof. Defendant testified that he and plaintiff had treated the stock as being one half plaintiff's, had exchanged such sums of money as were necessary to give

plaintiff one-half of any dividends received and one-half of any savings effected in defendant's income tax liability by reason of the Subchapter S election, and to reimburse defendant for one-half of any sums by which his income tax was increased because of dividends received. This testimony is supported by exhibits consisting of Advance's profit and loss statements and balance sheets, and a "recapitulation" prepared by defendant. The stock purchase agreement referred to in paragraph 2 of the "Agreement for Joint Venture" is not in evidence.

The trial court found that plaintiff was not entitled to the relief sought under Counts II and III, and as to Count I in which plaintiff sought a declaratory judgment, entered the following judgment:

"1. The joint venture agreement dated February 18, 1959, is not void or voidable because it does not contain a specific termination date, but remains in effect until the joint venture is dissolved by mutual consent or terminated by the happening of certain, express, future events referred to in the contract, namely (a) the sale of the shares of stock constituting the subject matter of the joint venture; or (b) the redemption of said shares by the corporation, and the division of the proceeds between the parties.

"2. The joint venture agreement was not intended to be terminable at the will of either party thereto.

"3. The joint venture agreement was not unilaterally terminated at the demand of the plaintiff, and, therefore, is still in full force and effect."

This appeal followed.

Plaintiff contends here (a) that the joint venture agreement is either void, or terminable at the will of either party, (b) defendant holds the stock as trustee for plaintiff and his refusal to transfer 20 shares to plaintiff is a breach of the fiduciary relationship, (c) the agreement is without consideration, lacks mutuality, is void

392

as being contrary to public policy and (d) the court erred in denying plaintiff's motion to file instanter, an amended complaint to conform the pleadings to the proof.

Neither party has cited, nor has this court found, an opinion of an Illinois appellate court deciding the precise question of whether failure to provide for a termination date in a joint adventure agreement voids the agreement. What appears to be the majority rule is well stated in Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 209 F2d 917, wherein the court, at page 919, said: "The duration of a joint adventure may be fixed by the terms of a contract between the parties or by mutual consent. If no date is fixed by the contract for its termination, the agreement remains in force until its purpose is accomplished or until such accomplishment has become impracticable. (Citing cases.)"

■ ■ Our Supreme and Appellate Courts have repeatedly held that failure to specify a termination date does not render a contract invalid. (See Galler v. Galler, 32 Ill2d 16, 203 NE2d 577; Vogel v. Melish, 31 Ill2d 620, 203 NE2d 411; Illinois Cent. R. Co. v. Michigan Cent. R. Co., 18 Ill App2d 462, 152 NE2d 627.) In the absence of decisions of the courts of Illinois to the contrary, we hold that the failure to specify a termination date did not render the agreement invalid.

Plaintiff, citing chapter 106½, section 31(1)(b), Ill Rev Stats, argues that the agreement was terminable at will.

■ ■ Although a joint adventure and a partnership are in many respects similar, the Supreme Court in Harmon v. Martin, 395 Ill 595, 71 NE2d 74, drew an important distinction, when at page 612, it said: "A joint adventure is not regarded as identical with a partnership, although, generally speaking, it may be said that practically the only distinction between the two is that the former relates to a single specific enterprise or transaction, while the latter relates to a general business of a particular kind."

393

An important rule applicable to both is stated by the court as follows: "A joint adventure, as well as a partnership, is controlled by the terms of the agreement under which it is formed or created."

The agreement between the parties, as stated in the preamble, created a joint adventure "with respect to the acquisition of said shares, the ownership thereof, the division of dividends which may hereafter be paid upon said shares, and the distribution of the proceeds in the event that said shares are hereafter sold, redeemed or otherwise disposed of"; and as provided in paragraph 5 applies "to the purchase, ownership and disposition of the shares. . . ." In view of these provisions, the trial court correctly concluded that the purpose of the joint adventure would not be accomplished until the occurrence of one of the events enumerated in paragraph (1) of its order, that it was not terminable at will, and had not been terminated upon plaintiff's unilateral demand.

We do not discuss plaintiff's contentions with respect to the fiduciary relationship between joint adventurers, nor the cases cited in support thereof, other than to say that the cases cited are not in point. Unlike those cases, there is here no issue presented as to plaintiff's ownership of an undivided interest in the shares; it is so provided in the agreement and admitted by defendant.

We have considered plaintiff's contentions that the agreement is void for want of mutuality, lack of consideration and contrary to public policy, and upon examination of the authorities cited in support thereof hold these contentions to be without merit.

We have examined the testimony and find no basis for disturbing the trial court's findings with respect to Counts II and III of the complaint.

We turn to plaintiff's final contention that the trial court erred in refusing to permit him to file an amended complaint, amending Count I to conform to the proof. The proposed amendment contains a number of

allegations, the proof of which could only be made by parol evidence tending to vary the express language of the written agreement. Although the trial court permitted the plaintiff to testify with respect to the matters alleged, at the time of announcing its decision, the court stated that the testimony could not be considered for the purpose of varying or supplying alleged deficiencies in the written agreement, and nothing would be achieved by permitting the amendment. In so holding, the trial court did not abuse its discretion and its refusal to permit the filing of the amendment was not error.

For the reasons herein set forth, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.