MARTHA L. COMPTON *et al.*, Plaintiffs-Appellees, *v.* PAUL K. HARDING REALTY COMPANY *et al.*, Defendants-Appellants.

(No. 70-118;

Fifth District—June 27, 1972.

490

Henry A. Schwarz, of O'Fallon, (Robert J. Harding, of counsel,) for appellants.

Dixon and McDonnell, of Belleville, (Joseph B. McDonnell, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants appeal from a judgment of the trial court rendered in a suit for dissolution of a closely held corporation and other relief. Plaintiff Compton was a shareholder and officer, and plaintiff Leoty was a shareholder of the corporation. Defendants were the president-manager of the corporation, Paul K. Harding (to be hereinafter referred to as defendant Harding) and his wife Marguerite Harding, and the corporation.

The facts show that plaintiff Compton and defendant Harding had been acquainted since 1959 and they were co-employees of a real estate concern, he as its sales manager and she as a saleswoman. In February, 1962, they commenced discussions concerning the formation of their

own real estate business. It appears that defendant Harding took the initiative in the discussions because of his more extensive experience in the business. The discussions culminated in the formation of a corporation named Paul K. Harding Realty Co., the charter being issued on May 8, 1962. Further discussions ensued, principally between plaintiff Compton and defendant Harding. They were concerned with preparation of a written agreement relating to the formation and conduct of the business of the corporation. Plaintiff Compton stated that it was worked out during several meetings and was initially prepared in a rough draft on yellow paper by Mr. Harding and she assumed that he typed it. Afterward she and her brother (Leoty) read it over, thought it was fair and agreed to it. She further said that the only provisions she and her brother wanted were that there would not be any other shareholders brought into the company, the rest of it was Mr. Harding's ideas. Defendant Harding, called by plaintiffs as an adverse witness, testified he and plaintiff Compton had many meetings regarding the agreement and that she asked him to sign it and he said, "What do you want me to sign this for, this has no value whatsoever except as a memo." Later in his testimony he made further comment regarding the agreement as follows:

"Well, this memo copy of what the thing—The lines this corporation was to be drawn on, and the whole picture, was made up like was testified, on yellow paper, and it was the work of several times of gotten together. This was made up, and sometime after it was made up Martha came to me and asked me to put my name on it. I said it wasn't necessary, it was a memo thing and it had no further force and effect except to be the memorandum along which this corporation was to be formed and operated."

The written agreement is a two page, undated document, typed on letterhead bearing the printed name, address and telephone number of defendant corporation. It is divided into two sub-parts, sub-part A, entitled Ownership Distribution and Responsibility, and sub-part B, entitled Operating. The instant dispute principally involves only the latter. The relevant parts of the section are set out as follows:

"President as operating head shall have authority to set salaries * * * and to do those things which normally are the responsibility of the operating head of the company.

Manager—Salary of operating manager is to be set at $100 a week, basic. When business is showing a profit salary is to be increased to $175 a week. This salary is to be determined on the previous 90 days profit experience(.)

Management shall consist of Paul K. Harding as president and

manager, Martha L. Compton as executive vice president and treasurer. * * *"

The document is signed in ink by Paul K. Harding, Martha L. Compton, and Forrest C. Leoty.

From the inception of the business the internal affairs of the corporation were badly managed and loosely attended. The shares of stock were not issued to the parties in conformity with the agreement. Under the terms of the agreement the corporation president, defendant Harding, had authority to set the salaries of the officers of the corporation. The record indicates that the salary of the manager was to be set at $100 a week, basic, but when the business was showing a profit the salary would be increased to $175 a week. The record indicates that the salary of defendant Harding was fixed at $175 per week at the onset of business and a few months later was raised to $200 a week, and in the fall of 1964, to $250 a week. Plaintiff Compton was aware of the raises and voiced some objection to them. In addition to his salary defendant Harding received commissions based upon listings and sales in which he had a part on a standard commission basis. He also made real estate appraisals, splitting the fees 70% to the corporation and 30% to himself. There was testimony from the parties, the office manager of the corporation and an accountant, regarding the various items of yearly profits of the corporation on both a calendar year and a fiscal year basis, and as to the amounts received by defendant Harding as salary, commission and appraisal fees. The testimony is so conflicting and divergent that it is readily apparent that the salaries, commissions and appraisal fees of the officers were without a discernible pattern or plan; a state of affairs that quite naturally led to disagreement of the parties and the necessity, in a closely held corporation, for dissolution.

Plaintiffs' complaint alleged the execution of the agreement, the organization of the corporation and their payment of the sum of $7,650 pursuant to the agreement; the defendant Harding would be employed as its manager at a salary of $100 per week but when the business was showing a profit his salary was to be increased to $175 per week. It further states that no notice of meetings of the stockholders or directors were given or sent to plaintiffs; that to the knowledge of the plaintiffs there has been no meeting of the stockholders or directors and that the operation and policies of defendant corporation were controlled and directed by defendant Harding without the knowledge or consent of the plaintiffs. The early payments of salary to defendant Harding were listed, the aggregate being $52,133.06 as of April 1966. It was then alleged that as the corporation had shown a profit for every 90 days (which it

did not) the defendant Harding would have paid $175 per week for 207 weeks or a total of $36,225 and since he was actually paid $52,133.06, the salary payments were excessive in the amount of at least $15,908.06, as of April 1966. The plaintiffs then charged that defendant Harding was guilty of common law corporate mismanagement, self-dealing and waste of corporate assets. The individual defendants were also charged with conspiracy for the purpose of taking over the entire business of the corporation to the exclusion of the plaintiffs. The complaint next alleged the elements necessary for the issuance of an injunction order against the individual defendants which would prohibit them from holding directors meetings or exercising any rights or powers as officers, directors or managers with respect to the affairs of the corporation. It ended with a prayer for a temporary injunction, appointment of a receiver, an accounting of the individual defendants and a decree dissolving the corporation and winding up its affairs. By leave of court, Counts II and III were later added to the complaint to allege fraud and breach of contract.

The trial court, acting without notice and without bond, issued a temporary injunction against the individual defendants, enjoining them from exercising authority as officers, directors and managers of defendant corporation and from in any way conveying or attempting to convey, sell or encumber any assets of the corporation. On appeal to this court the temporary injunction order was reversed. (See 87 Ill.App.2d 219.) The defendants filed a motion for damages resulting from the trial court's injunction. After a hearing the trial court allowed the individual defendants damages in the amount of $1,500 for attorney fees and $209.50 for costs of printing briefs.

After a trial on the merits before the court sitting without a jury the trial court found that from the date of incorporation to the date of the trial defendant Harding was paid $29,457 in excess of the contractual salary. The court expressly found that no fraud was committed by defendant Harding. After making certain other findings the court entered judgment that defendant Harding repay the corporation $29,457 and ordered a final accounting of the corporation assets. The order incorporated a formula for liquidation which provided that 12½% of the assets should be allocated to the individual plaintiffs and defendant Harding; thereafter the remaining 62½% of the assets should be divided 25% to Paul K. Harding and 25% to Martha L. Compton; thereafter the remaining 31¼% of the total assets should be divided equally between defendant Harding and plaintiffs. The judgment provided that the $29,457 to be paid by defendant Harding was to be placed in escrow in a bank pending final determination of this case. The costs of the action, including fees for the accounting ordered as part of the final dissolution were taxed

against the defendant Harding. After a hearing on a post trial motion the court amended the judgment to provide that the receiver appointed during the pendency of the temporary injunction was entitled to fees of $2,496.90, and charged them against defendant Harding. The amended judgment also changed the dissolution order as follows:

"Each investor was allowed a return of 12½% of his investment ($8,500 in the case of the individual defendants and $7,650 in the case of the plaintiffs); 75% of the remainder of the assets were then to be divided equally between management, Paul K. Harding and Martha L. Compton, and 25% of the remainder was to be divided equally among the investors, Paul K. Harding, Martha L. Compton and Forrest C. Leoty."

In all other respects the earlier judgment was confirmed.

Defendants initially contend on appeal that the trial court erred in giving credence to and upholding the memorandum or contract entered into by the parties. It is their contention that the alleged contract is so ambiguous that it cannot constitute a binding contract but can serve only as a memorandum or guidepost to the true understanding of the parties. It is their further contention with regard to the agreement that since it is ambiguous the construction placed on the contract by the parties themselves should be the controlling factor in its interpretation. ■■ We think these contentions of the defendants are not well founded. Defendant Harding was the leader in the formulation ˙and preparation of the agreement by which the plaintiffs were led to participate in the corporation with both their money and their services. Agreements for the control of closely held corporations have been before Illinois courts on many occasions and although their provisions may be in some respects in technical violation of the Business Corporation Act (ch. 32, sec. 157.1, *et seq.*, Ill. Rev. Stat.) they have nevertheless been favored. As stated by the Supreme Court in *Galler v. Galler*, 32 Ill.2d 16, 203 N.E.2d 577:

"Where, * * * no injury to a minority interest appears, no fraud or apparent injury to the public or creditors is present, and no clearly prohibitory statutory language is violated, we can see no valid reason for precluding the parties from reaching any arrangements concerning the management of the corporation which are agreeable to all."

We perceive nothing in the record in this case nor in the agreement utilized by the parties to prevent the application of the *Galler* rule. We accordingly find that the trial court was correct in upholding the validity of the agreement and proceeding to render its judgment accordingly. We also are of the opinion that the agreement is not objectionable, as defendant contends, because it failed to contain a termination date. It is held that the absence of a termination date for agreements of this

nature does not render them void. *Galler v. Galler, supra; Maimon v. Telman*, 88 Ill.App.2d 387, 232 N.E.2d 15.

■■ More cogent is defendants' argument regarding the amount the trial court found defendant received in excessive salary and ordered repaid. The judgment order of the trial court found that defendant Harding had been paid $29,457 in excess of the salary to which he was entitled and ordered that amount repaid. That figure cannot be reconciled with the evidence. While the judgment makes no distinction between salary and commissions received for sales and appraisals, it is obvious that commissions were added to the salary payments in the computation and that the salary allowed was based on $100 per week, the lower of the amounts specified in the agreement.

The trial court expressly found that defendant Harding had committed no fraud and on the record presented we can only concur. Plaintiff Compton admitted she received commissions for sales she had made on behalf of the corporation the same as defendant Harding so we accordingly can find no basis upon which the plaintiffs are entitled to deprive defendant Harding of his commissions. Plaintiffs presented no substantial evidence to show that the defendant corporation operated at a loss for any ninety day period. Such a showing would be necessary justify a limitation of defendant's salary to $100 per week. The only evidence in the record regarding any loss of defendant corporation covers the period from May 8, 1962, to March 31, 1963, when the business suffered a total loss of $58.73 after payment of salaries to officers. Following the initial loss the corporation thereafter earned an annual profit. Under this circumstance it would be speculative for the trial court to infer that the corporation suffered any loss during any particular ninety day period. Since we find the defendant Harding entitled to receive his commissions for sales and appraisals and that his salary should have been computed upon the basis of $175 per week, we find the trial court was in error in its finding that defendant was paid an excess salary of $29,457. Computing his salary at $175 per week as authorized and limited by the agreement, we find that from the period from May 8, 1962, to March 31, 1967, the defendant was paid an excessive salary of $15,925 and it is this amount which he should be compelled to repay.

Defendant Harding also assigns as error the action of the trial court in assessing the cost of the receivership against him. At the time the temporary injunction was issued the trial court appointed a receiver to take charge of and manage the assets and properties of defendant corporation. After this court ordered the temporary injunction dissolved, defendant Harding filed a motion for damages pursuant to chapter 69, section 12, Ill. Rev. Stat. After a hearing defendant was awarded attorney

fees and costs incurred in obtaining dissolution of the injunction. Following the trial on the merits the trial court's amended judgment order allowed the receiver compensation for her services in the amount of $2,460 plus mileage of $36.90, a total of $2,496.90, and ordered defendant Harding to pay the entirety thereof.

Defendant Harding vigorously attacks this portion of the order, arguing that since it was held that the temporary injunction was improvidently entered at the request of plaintiffs, and the receivership was an adjunct of the injunction proceeding and was terminated upon the dissolution of the injunction, the plaintiffs should be compelled to pay the cost thereof. The action of the trial court in assessing costs of the receivership is termed arbitrary and unreasonable.

■■■ It is well settled that a defendant may recover as damages, upon the dissolution of a temporary injunction, the attorney fees and costs which he has paid for services rendered in obtaining a dissolution of an injunction, but not those rendered in the general defense of the suit. (*House of Vision, Inc. v. Hiyane*, 42 Ill.2d 45, 245 N.E.2d 468; *Lambert v. Alcorn*, 144 Ill. 313, 33 N.E. 53.) Pursuant to this rule defendants have already been awarded attorney fees and costs and that order is not here in question. It is defendants' position that the costs of the receivership are and should be considered as part of the costs of the injunction proceeding. In the case of *Leonard v. Pearce*, 271 Ill.App. 428, it is stated:

"Compensation for losses sustained by a defendant which are the actual, natural and proximate result of the wrong committed by the restraining order while it is alive and operating is the proper measure of damages in a case of this character. Any actual damage, suffered by reason of the wrongful suing out of the injunction is a proper subject of inquiry, but claimed damages which are so uncertain as to be incapable of ascertainment cannot be recovered. Probably the most general rule, where the defendants have been deprived of the control, use or enjoyment of real or personal property is that there may be a recovery of the value of the use or the reasonable rental value of the property during the time its enjoyment was prevented by injunction."

The question then becomes whether or not the expense of the receivership may be considered an element of damage flowing from the issuance of the injunction. The trial court clearly had the power to appoint a receiver for the purpose of protecting the assets of the corporation and to prevent irreparable loss or injury pending the suit. The receiver is an officer of the court appointed on behalf of all parties to take possession and hold it for the benefit of the party ultimately entitled to the receivership property. (*Town of Vandalia v. St. Louis, V. & T. H. R. Co.*, 209 Ill. 73, 70 N.E. 662.) The power to appoint a receiver is most usually called into

action either to prevent fraud, save the subject of litigation from material injury, or rescue it from threatened destruction. A reeciver is defined to be an indifferent person between the parties, appointed by the court, and on bhalf of all parties, and not of the complainant or one defendant only, to receive the thing or property in litigation, pending the suit. (*Baker v. Administrator of Backus,* 32 Ill. 79.) The appointment of a receiver is a branch of equity jurisdiction not dependent upon any statute, and rests largely in the discretion of the appointing court. It had its origin in the English Court of Chancery at an early date, and it was incidental to and in aid of the jurisdiction of equity to enable it to accomplish, as far as practicable, complete justice among the parties before it, the object being to secure and preserve the property or thing in controversy for the benefit of all concerned pending the litigation, so that it might be subjected to such order or decree as the court might make or render. (*Chicago Title and Trust Co. v. Mack,* 347 Ill. 480, 180 N.E. 412.) In *Firebaugh v. McGovern,* 404 Ill. 143, 88 N.E.2d 473, a distinction was noted between cases wherein the ultimate relief sought is within the general statutory jurisdiction of the court and those wherein such ultimate relief is beyond its jurisdiction. In the former class the appointment of a receiver, if made upon an insufficient showing of necessity or danger, is not void but is merely an abuse of discretion, rendering the order subject to a reversal on appeal. In the latter class of cases, however, the court having no jurisdiction to adjudicate the principal matter, its orders purporting to grant the ancillary relief of temporary receivership are likewise beyond its jurisdiction and as such are void.

■■ In view of these authorities we believe the trial court abused its discretion in taxing the costs of the receivership against defendant Harding. Since a receiver is an officer of the court and the court did have general jurisdiction of the subject matter and the parties it was therefore invested with power and authority to make the appointment. Plaintiffs were the parties who procured the issuance of the temporary injunction and the appointment of the receiver. The temporary injunction was dissolved, and with it the receivership, when it was found that the trial court had abused its discretion in ordering it upon the circumstances presented. No fault or wrongdoing can be ascribed to defendant Harding to justify the assessment of the costs of the receivership against him. On the other hand, the receiver took charge of and managed the property for the court and for all the parties interested in the litigation. Under these circumstances we think the expense of the receivership should properly be charged against the assets of the defendant corporation and thus indirectly borne by the parties to the suit.

■■ Defendants next contend that since the trial court expressly

found that they had committed no fraud and that there was no evidence of injustice or impropriety upon their part, the court had no basis for its ·order of dissolution of the corporation and distribution of its assets. They argue that jurisdiction of courts of equity to liquidate assets and the business of a corporation is set out in ch. 32, sec. 157.86, Ill. Rev. Stat., which does not appear to include a situation presented by the facts here. However, as pointed out by appellees, sub-section (3) and (4) of that statute provide that powers of liquidation may be invoked in a shareholders action where it appears that the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent, or that the corporate assets are being misapplied or wasted. Our Supreme Court has held that the word "oppressive," as used in the statute, does not carry an essential inference of imminent disaster, but can contemplate a continuing course of conduct. The word does not necessarily savor of fraud, and even the absence of mismanagement or misapplication of assets does not prevent a finding that the conduct of the dominant director or officer has been "oppressive." Such term is not synonymous with "illegal" and "fraudulent." (*Central Standard Life Ins. Co. v. Davis,* 10 Ill.2d 566, 141 N.E.2d 45; *Gidwitz v. Lanzit Corrugated Box Co.,* 20 Ill.2d 208, 170 N.E.2d 131.) We think there is ample evidence in the record showing an arbitrary, overbearing and heavy-handed course of conduct of the defendant Harding to justify the finding of oppression and the order of dissolution. Specific instances of such evidence include testimony regarding the failure of defendant Harding to call meetings of the board of directors or to consult with plaintiff Compton regarding management of corporate affairs, his imperious attitude when questioned about his salary and his dilatory reaction to the plaintiffs' requests.

■■ Defendant Harding also complains that the court's order made no provision to pay him for his services as president and manager of the corporation since the date the injunction was issued. However, no such contention was raised in the trial court and no claim ever presented by counter claim or otherwise for payment for any such services. We are accordingly without authority to consider the matter since his demand cannot be made for the first time on appeal.

The last question presented for review is whether the trial court's formula for final accounting was proper. Defendants point out that there is no provision made in the judgment order for discharge of the debts of the corporation. The procedure to be followed in liquidation of a corporation by a court of equity is provided by ch. 32, sec. 157.87, Ill. Rev. Stat. That section provides, in the part relevant here:

"* * * The assets of the corporation or the proceeds resulting from a sale, conveyance, or other disposition thereof shall be applied to the

expenses of such liquidation and to the payment of the liabilities and obligations of the corporation, and any remaining assets or proceeds shall be distributed among its shareholders according to their respective rights and interests. * * *"

Thus, the order of the court regarding distribution of assets should be amended to provide for payment of the expenses of the liquidation and the payment of the debts of the corporation. Thereafter, the remaining assets shall be distributed among the parties according to their respective rights and interests. Since the validity of the agreement is here sustained, it will control the distribution of the assets to the shareholders and we think the court's order, as amended, was proper in this regard.

For the foregoing reasons the order of the trial court, as amended, will be modified to require defendant Harding to repay to the corporation the sum of $15,925 which he received as excessive salary, such payment to be made to the corporation to be available in the liquidation proceedings. The order is also modified to assess the costs of the receivership against the corporation and to provide that the corporate assets, upon dissolution, will be applied first to the expenses of the liquidation and payment of the liabilities and obligations of the corporation, and thereafter in accordance with the order of the trial court. In all other respects the order of the trial court is affirmed.

Affirmed in part, modified in part, and remanded for further proceedings.

G. MORAN, P. J., and CREBS, J., concur.