# Illinois Official Reports

## Appellate Court

---

### *City of Chicago v. Jewellery Tower, LLC*, 2021 IL App (1st) 201352

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF CHICAGO, a Municipal Corporation, Plaintiff, v. JEWELLERY TOWER, LLC; GLOBAL DISASTER RECOVERY, INC.; USA WATER AND FIRE RESTORATION, INC.; PD LENDER, LLC; ADAM DAVID PARTNERS 1, LLC; LAWRENCE A. BRADI; VALERIO DEWALT TRAIN ASSOCIATES, INC.; and UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants (MRR 55 Washington Owner LLC, Defendant-Appellant; Courtney Jones, Jones Receiverships, LLC, Court Appointed Receiver, Appellee). |
| District & No. | First District, Sixth Division<br>No. 1-20-1352 |
| Filed<br>Rehearing denied | July 16, 2021<br>September 15, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-M1-401501; the Hon. Patrice Ball Reed, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Eric L. Singer and Ryanne Bush Dent, of Ice Miller LLP, of Lisle, and Monte L. Mann, of Novack and Macey LLP, and Demetris A. Kare, of Kare & Associates, both of Chicago, for appellant.<br><br>No brief filed for appellee. |

| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. |
| --- | --- |
| | Justices Harris and Oden Johnson concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, MRR 55 Washington Owner LLC (MRR), appeals from the circuit court's interlocutory order that denied its motion to remove the court-appointed receiver, Jones Receiverships, LLC, as receiver. On appeal, MRR contends that the court erred when it did not remove the receiver because the receiver had an undisclosed conflict of interest and could not be impartial or completely loyal due to a secret agreement the receiver had with another party in the case. For the following reasons, we reverse the circuit court's ruling that denied MRR's motion to "Remove Jones Receiverships, LLC as Receiver for Undisclosed and Improper Conflict of Interest, to Enjoin Jones Receiverships from Taking Further Actions and to Appoint New Receiver," and we direct the circuit court to appoint a new receiver. It is important to note that the receiver did not file a response brief in this appeal. In May 2021, we entered an order that stated that we were taking the case on appellant's brief only. We also note that the City of Chicago filed a letter with the clerk of the Appellate Court, First District, that stated that the City would not be filing a brief in this appeal. No other parties in this action have filed anything with this court in this appeal.

¶ 2                                          I. BACKGROUND

¶ 3        This action arises out of a complaint filed in 2017 by the City of Chicago (City) against the owners of a building located at 55 East Washington Street in Chicago (Pittsfield Building) for building code violations. The defendant-owners related to this appeal are MRR and Jewellery Tower. According to MRR's brief on appeal, MRR owns floors 13 to 21, which are residential in nature, as well as portions of the lobby and certain elevators. Jewellery Tower owns portions of the lobby and floors 1 to 12 and 22 to 43. Other than some retail space on the first floor, the sections owned by Jewellery Tower are vacant. The City's allegations of building code violations related to the interior and exterior of the Pittsfield Building and included allegations that the defendant-owners failed to, *inter alia*, maintain the building or structure in a structurally safe and stable condition; failed to maintain the exterior walls that have washed out terra cotta; and failed to maintain the exterior walls of the building or structure free from holes, breaks, rotting timbers, and any other conditions that might admit rain or dampness to the walls. Pursuant to a recorded declaration of covenants, conditions, restrictions and easements for the Pittsfield Building, MRR is responsible for paying a certain percentage of various costs that Jewellery Tower must pay for services for the Pittsfield Building, including maintaining the façade.

¶ 4        The record shows that, in December 2017, Xiao Hua Gong (a.k.a. Edward Gong), who owned Jewellery Tower, was charged with fraud and money laundering in Canada. In October 2018, the United States District Court for the District of Columbia entered an order that stated that criminal proceedings were pending against Gong in the Ontario Superior Court of Justice, which had issued three restraining orders on December 19, 2017, providing that certain

properties owned by Gong in the United States, including the Pittsfield Building, were subject to forfeiture under Canadian law. Pursuant to an international treaty, the United States District Court's order enforced the restraining orders issued by the Ontario Superior Court of Justice and restrained Gong's portion of the Pittsfield Building and other properties owned by Gong in the United States.

¶ 5                              A. Circuit Court's Appointment of a Receiver

¶ 6        In December 2018, the City filed an emergency petition for appointment of a receiver, in which it requested the court to authorize and order a receiver to enter into possession of the Pittsfield Building and to perform the following duties: to prepare a feasibility study regarding the care, management, and repair of the property; to fully fund the construction escrow; to pay for utilities and scaffolding; and to cooperate with the other owner to fix the Pittsfield Building. In January 2020, pursuant to section 11-31-2 of the Illinois Municipal Code (65 ILCS 5/11-31-2 (West 2018)), the circuit court ordered the appointment of a receiver and requested that the parties submit recommendations for the receiver.

¶ 7        Thereafter, the City recommended CR Realty to serve as receiver. Jewellery Tower objected to appointing a receiver, asserting that the City failed to establish that there were dangerous and hazardous conditions at the Pittsfield Building. Jewellery Tower further stated that if the court appointed a receiver, then its requested receiver was "Courtney Jones."

¶ 8        On January 23, 2020, the court entered an order appointing "Jones Enterprises" as general receiver for Jewellery Tower's portion of the Pittsfield Building. The court ordered the receiver and its funding sources to provide an affidavit of independence from Gong and his affiliates.

¶ 9        The record on appeal contains an "Affidavit of Independence of Courtney Q. Jones" dated February 14, 2020, and signed by Courtney Q. Jones. The affidavit is not stamped as being filed with the clerk of the circuit court of Cook County, and according to MRR's brief on appeal, the receiver delivered it to the circuit court on the night before the November 19, 2020, hearing on MRR's motion to remove the receiver. Jones averred in the affidavit that "[p]er the Court direction to provide an Affidavit of Independence, I affirm that I am independent from [Gong] and his affiliates" and that he would "act as Court Appointed Receiver through Jones Receiverships, LLC, a neutral third-party custodian for the Subject Property." He further stated that, "[a]s an officer of the court, I am not an employer of any of the defendants or the City of Chicago, and ultimately answer to the judge" and "I will work diligently with the judge, parties, representatives, vendors, tenants and others in order to advance the interests of the Court to protect the Subject Property, citizens, visitors, pedestrians and all others in and near the Subject Property."

¶ 10       On March 5, 2020, the court entered an order clarifying its January 23, 2020, order that appointed the receiver and stating as follows. Dangerous and hazardous conditions existed at the Pittsfield Building that jeopardized the health and safety of the public and citizens of the City due to, *inter alia*, leaking water pipes and cracked and broken windows throughout the upper floors of the Pittsfield Building that could fall, strike, and impale pedestrians. Due to these conditions, the Pittsfield Building failed to meet the minimum standards of health and safety required by the City's municipal code, and the threat of harm would continue without the appointment of a receiver. The court's order also clarified the receiver's name and stated that all authority previously granted to Jones Enterprises would be granted to Jones Receiverships, LLC. The court authorized the receiver to, *inter alia*, maintain possession,

custody, and control of the Pittsfield Building to prevent any further damage and stated that the receiver's powers and duties to repair and stabilize the building would maintain the *status quo* of the Pittsfield Building.

¶ 11    On June 2, 2020, the Ontario Superior Court of Justice entered an order that modified its previous restraining order on the Pittsfield Building to permit the receiver to take over the management of Gong's interest in the Pittsfield Building to the limited extent necessary to do work on it. The order stated that the restraining order did not affect the ability of any receiver, including Jones Receiverships, LLC, to discharge its court approved duties, including collecting rent and issuing receiver certifications and liens for repair or improvements to the Pittsfield Building.

¶ 12              B. MRR's Motion to Remove Jones Receiverships, LLC, as Receiver

¶ 13    In September 2020, MRR filed a motion titled "Motion to Remove Jones Receiverships, LLC as Receiver for Undisclosed and Improper Conflict of Interest, to Enjoin Jones Receiverships from Taking Further Actions and to Appoint New Receiver" and requested the court to remove Jones Receiverships, LLC, as receiver. MRR argued that the court had previously required the receiver and its funding sources to provide affidavits of independence from Gong and his affiliates but that the receiver had not done so. MRR also asserted that the receiver had a conflict of interest and was disqualified because it represented Gong in another real estate deal.

¶ 14    With respect to the receiver's other real estate deal with Gong, MRR asserted as follows. Courtney Jones was the owner of Jones Receiverships, LLC, and was the primary person conducting the receiver's work. Jones was a licensed real estate broker in Illinois, and in addition to his position at Jones Receiverships, LLC, he was employed by Chicago Homes Realty Group (CHRG), whose CEO and managing broker was Jones's wife, Sanina Ellison Jones. CHRG and Jones Receiverships, LLC, operated at the same address. According to a real estate listing on CHRG's website, CHRG was the broker for another property owned by Gong in Harvard, Illinois, which CHRG advertised at a listing price of $30 million. Jones and his wife were the listing brokers for the Harvard property in the Multiple Listing Service, they had a contractual relationship with Gong for the sale of the Harvard property, and Jones was actively involved in the sale of the Harvard property. MRR argued that Jones and CHRG's representation of Gong in the Harvard property real estate deal created an irreconcilable and improper conflict of interest. MRR contended that Jones and Jones Receiverships, LLC, were disqualified and should be removed as receiver and enjoined from conducting any further receivership business.

¶ 15    MRR also asserted that on August 7, 2020, its attorney sent a letter to the receiver's attorney that inquired about any agreement CHRG or Jones may have had with Gong to sell certain assets Gong owned. The letter also requested disclosure of whether an agreement with Gong existed and a copy of the receiver's affidavit of independence, which the court had ordered on January 23, 2020. MRR attached the August 7, 2020, letter to its motion and asserted that the receiver's attorney never responded to this letter. MRR also stated in its motion that its attorney sent another letter to the receiver's attorney on August 24, 2020, but the receiver's attorney never responded.

¶ 16                              C. Jones Receiverships, LLC's Response to MRR's
                                          Motion to Remove Receiver

¶ 17         In response, the receiver acknowledged that Jones's wife was the owner of CHRG and that Jones's real estate license was under CHRG. The receiver further explained that, in March 2020, Gong's attorney for his matters in Canada contacted Jones and asked whether he would be willing to list Gong's Harvard property. "Due to Jones'[s] heavy work load on the receivership and property management side of his business, he declined, and referred CHRG," which in turn entered into a listing agreement with Gong. Attached to the receiver's response was the listing agreement, which was dated April 3, 2020, and signed by Sanina Ellison. It provided that CHRG was the broker for the Harvard property, Sanina Ellison was the sales associate affiliated with the broker, the owner appointed the broker the exclusive right to sell the property at a purchase price of $30 million, and the owner agreed to pay the broker $50,000 for advertising and marketing costs and a 15% commission. The receiver asserted that Jones did not participate in the listing or marketing of the Harvard property and was not an owner or member of CHRG. It also stated that Jones's wife, Sanina Ellison, was listed as the registered agent, president, and secretary of CHRG and was not a member or officer of Jones Receiverships, LLC. The receiver noted that Sanina Ellison did not end up being the listing broker for the Harvard property because Gong selected a broker in Canada, who ultimately sold the property.

¶ 18         The receiver further argued in its response that MRR did not provide any allegations to show how CHRG's role in listing the Harvard property could interfere with the impartial discharge of the receiver's duties and that the receiver did not receive a financial benefit from the listing agreement. The receiver also asserted that it filed an affidavit with the court stating that Jones was operating independently of Gong and was not receiving any financial assistance or benefit from Gong. The receiver stated that the Harvard property was not the subject of this action.

¶ 19                      D. MRR's Reply to Its Motion to Remove the Receiver

¶ 20         In reply, MRR asserted that the receiver conceded that Jones's wife owned CHRG, Jones was a broker employed by CHRG, and Gong's attorney contacted the receiver to sell the Harvard property. MRR argued that the receiver was disqualified under Cook County Rule 8.1, which states that a receiver is disqualified and may not be appointed if the receiver "stands in any relation to the subject of the controversy that would tend to interfere with the impartial discharge of his duties as an officer of the court." Cook County Cir. Ct. R. 8.1(a)(iv) (July 1, 1976). MRR asserted that Gong offered the receiver a business opportunity to earn a large commission, which the receiver secretly diverted to his wife, and that the receiver's business deal with Gong impaired the receiver's ability to be impartial. MRR argued that, although the receiver had stated in its response that it had provided an affidavit of independence to the court, an affidavit was not provided until the City's counsel inquired about it on October 24, 2020.

¶ 21                      E. Hearing on MRR's Motion to Remove the Receiver

¶ 22         At the November 19, 2020, hearing on MRR's motion to remove the receiver, counsel for MRR, the receiver, the City, and Jewellery Tower were present. MRR's counsel argued that the receiver had a conflict of interest because the receiver was acting on behalf of Gong as a receiver in this action as well as in another matter where Gong's property was worth $30

million. MRR's counsel argued that the receiver had a financial interest in that other property because he could have earned over $3.5 million if it was sold. He argued that, even though a sale never occurred with the Harvard property and the receiver did not get the commission, a conflict of interest still existed because the receiver was actively engaged in and had an economic interest in the sale of that property.

¶ 23    In response, the receiver's attorney told the court that Gong's attorneys contacted Jones for the Harvard property sale because he was familiar with the various legal issues involved. She asserted that Jones "did not have the time to do it because of his work on [the Pittsfield Building] so he referred it to his wife's company where he is not an owner." She argued that Jones did not list or market the Harvard property, Jones did not work for and was not paid by Gong, Gong did not offer Jones anything related to the Harvard property, and Jones did not have any interest in Gong's business affairs. Counsel asserted that "Jones did assist with presenting those offers to the Canadian court, not to—It was a big package that was submitted with all the bids that they received." She stated that "Mr. Gong refused to sign the orders and the property was never sold" and that "Mr. Gong subsequently terminated that agreement." Counsel also argued, *inter alia*, that Jones had filed an affidavit of independence and the Harvard property was not related to the instant case and did not affect Jones's ability to operate as receiver.

¶ 24    In response, MRR's counsel stated, *inter alia*, that MRR did not receive an affidavit of independence from the receiver until October 26, 2020, even though the court had ordered the receiver to provide the affidavit in January 2020. MRR's counsel asserted that the affidavit he received was from February 2020 and was not filed.

¶ 25    As for the City's position, its counsel agreed with MRR that the receiver had a conflict of interest and stated as follows:

> "Judge, we can't ignore this clear conflict of interest. It's problematic. It wasn't disclosed. The rate of [commission] and the Harvard matter 15 percent is way outside the standards. The Court has to—has to say either disclose everything or you're out. *** You appointed Mr. Jones and he then goes behind your back to do this deal with Gong in Harvard. That should be disqualified."

¶ 26                    F. Documents Related to the Hearing on MRR's
                              Motion to Remove the Receiver

¶ 27    At the hearing on MRR's motion to remove the receiver, the receiver's attorney indicated that she had provided a letter to the court before the November 19, 2020, hearing. The record on appeal contains a letter dated November 18, 2020, from the receiver's attorney and addressed to the circuit court that stated as follows. "In April 2020, Mr. Jones, as the receiver for [the building], was contacted by attorneys for Gong and asked to list properties," and "[d]ue to time constraints, Jones referred the listing to [CHRG] and a listing agreement was signed by Sanina Ellison-Jones." Sanina Ellison-Jones listed and marketed the property, and Jones "prepared a bid package that was submitted to the Canadian attorney, Brian McNealy [*sic*]." The letter further stated that "[i]t was verbally disclosed at the very beginning that [Jones] would be a good fit since he was familiar with the Gong matters." The listing was not related to the Pittsfield Building, and Jones never corresponded with Gong and did not have a financial relationship or arrangement with Gong. The receiver remained financially independent from Gong in all respects. Gong ultimately canceled the listing agreement signed by CHRG.

¶ 28        Attached to the receiver's attorney's letter was the February 14, 2020, affidavit of independence from Jones and an affidavit from Mahmoud Faisal Elkhatib, who represented Jewellery Tower and Gong. In Elkhatib's affidavit, he averred that on April 8, 2020, he had a conference call with Gong's attorney in Canada and Brian McNeely, who was the representative of the Canadian Crown prosecuting Gong's cases in Canada. Elkhatib averred that he told the participants in that conference call that "we would be using [CHRG] to market and list the Harvard property for sale" and "we chose CHRG because of their affiliations with Courtney Jones, the appointed Receiver." Elkhatib further stated that Jones's involvement in the receivership process and his "familiarity with the various complexities of the various court cases meant he was ideal in facilitating the sale of the Harvard property." Elkhatib stated that the best contract for the Harvard property was obtained in July 2020 for $27 million and that Gong refused to sign it.

¶ 29                                    G. Circuit Court's Ruling

¶ 30        Following argument, the court denied MRR's motion to remove the receiver and found that there was no conflict. In doing so, the court stated that it read the documents submitted by the parties and that Jones's activities did "not arise to a level of conflict that you want to make it out to be." The court also stated that "[t]his is not a direct activity related to the property where he has a financial gain" and that Jones was not an owner of CHRG. The court further stated: "To the point where you want to make this something more serious than it is. There is no direct financial gain with regard to Pittsfield where Mr. Jones is the receiver." The court stated that the Harvard property "transaction did not occur," there was "no financial benefit" to his wife, and the "information that he submitted was for the government, not for Mr. Gong."

¶ 31        Thereafter, pursuant to Illinois Supreme Court Rule 307(a)(1), (2), (3) (eff. Nov. 1, 2017), MRR filed this instant interlocutory appeal of the circuit court's order that denied its motion to remove the receiver.

¶ 32                        H. Other Documents Included in the Record on Appeal

¶ 33        The record on appeal contains certain documents that we will briefly describe below, but it is unclear whether the circuit court had these documents when it issued its ruling. MRR cites these various documents in its opening brief. The receiver did not file a response brief objecting to these documents or to the documents being part of the record on appeal.

¶ 34        Among the documents are e-mail exchanges between Elkhatib and a prospective purchaser for the Harvard property in May 2020, and Jones was included on these e-mails. In one e-mail dated May 6, 2020, Elkhatib instructed the prospective buyer to send any offers to Jones. The record also includes a copy of a text message from this same prospective purchaser dated April 30, 2020, to a person identified as "Sanina" informing her that he would like to submit an offer for the Harvard property. In response, Sanina directed the prospective purchaser to contact Jones. Citing these e-mail exchanges and text messages, MRR asserts on appeal that, "[d]espite later claiming that he 'declined' to list the Harvard Property, Jones directly participated in sale negotiations with various buyers" and "Jones' wife and listing broker, Sanina Ellison, referred a potential buyer to Jones as *the* point of contact for the Harvard Property." (Emphasis in original.)

¶ 35    Another document is a letter dated November 16, 2020, from Brian McNeely, of the Ministry of the Attorney General in Canada, and addressed to the receiver's attorney. The letter addressed issues with Jones's alleged conflict of interest as receiver and stated:

> "A primary concern for the Crown back in April was whether the court appointed receiver, Mr. Courtney Jones, was completely independent of the accused, Mr. Edward Gong. Your client was aware of the Crown's concerns on that score. Mr. Jones accordingly addressed those concerns when he represented in his April 27, 2020, application in Canada (made through an unwitting Mr. Bytensky) that, the receivership aside, your client had no interest or involvement whatsoever in any matter involving Gong. As you now admit, this was untrue."

¶ 36    The record also includes an order issued by the Ontario Supreme Court of Justice dated October 30, 2020, in which it ordered Jewellery Tower's portion of the Pittsfield Building to be sold, provided that the United States District Court authorized the United States Marshals Service (USMS) to assist in conducting the sale in accordance with the USMS's policies and procedures.

### I. Documents Included in MRR's Appendix on Appeal

¶ 38    We also briefly summarize certain documents included in MRR's appendix on appeal, including an order from the United States District Court dated January 13, 2021, stating that on October 30, 2020, the Ontario Superior Court of Justice issued a management order allowing an interlocutory sale of the Pittsfield Building to preserve the value for forfeiture under Canadian law. The United States District Court also ordered the October 30, 2020, order from the Superior Court of Ontario to be enforced and ordered USMS to sell Jewellery Tower's portion of the Pittsfield Building pursuant to applicable law, policies, and practices.

¶ 39    Also in the appendix is an order dated February 10, 2021, from the Ontario Superior Court of Justice that vacated the previous restraint orders it had issued on the Pittsfield Building as well as the October 30, 2020, management order that ordered Jewellery Tower's portion of the Pittsfield Building to be sold.

¶ 40    The appendix further contains additional motions that were filed in the other proceedings since the United States District Court's January 13, 2021, order, which ordered USMS to sell Jewellery Tower's portion of the Pittsfield Building. The motions include the United States' "Urgent Motion to Stay the Modified Restraining Order on the Pittsfield Property and For Entry of the Proposed Order Authorizing the Interlocutory Sale of the Property" that was filed in the United States District Court and the Canadian application for revocation of management order and stay of an amending order that was filed by the Attorney General for Ontario in the Superior Court of Justice for Ontario.

### II. ANALYSIS

¶ 42    On appeal, MRR contends that the circuit court erred when it denied its motion to remove the receiver. MRR argues that the receiver's loyalty was divided because the receiver served as an arm of the court charged with managing the portion of the Pittsfield Building owned by Gong and, at the same time, actively worked for Gong to sell another property where Jones's wife could have earned over $4 million. MRR asserts that Gong's and Jones's attorneys admitted that Jones received the listing of the Harvard property because he was the receiver

for the Pittsfield Building and that Gong's attorney's affidavit stated that Gong specifically chose CHRG to sell the Harvard property because of its "affiliation with Courtney Jones, the appointed Receiver in the Pittsfield case." MRR argues that the receiver's agreement with Gong for the Harvard property created a conflict of interest and that the receiver could not impartially carry out its fiduciary duties. MRR asserts that the agreement with Gong was a "secret business deal," which the receiver failed to disclose to the circuit court. MRR requests that we reverse the circuit court's order, remove the receiver, and enjoin the receiver from taking further actions.

¶ 43 Following the filing of MRR's opening brief, on March 23, 2021, MRR filed a motion to set the case to ready status and for adjudication, in which it stated that the receiver's response brief was due on February 26, 2021, but that the receiver had not yet filed an appearance or a response brief. MRR also asserted in its motion that, after it filed its opening brief on appeal, the receiver filed a motion in the circuit court to sell Jewellery Tower's portion of the Pittsfield Building and that the receiver was attempting to make a substantial profit from the sale. MRR stated that the previous restraint order on Jewellery Tower's portion of the Pittsfield Building was lifted pursuant to a Canadian court order and that there was nothing to prevent the receiver from acting. When the receiver had still not filed a response or appearance in this court as of May 7, 2021, this court entered an order stating that we would take the case on appellant's brief only.

¶ 44 As of the date of the filing of this opinion, the receiver has not filed an appearance or response. We note that we may decide the merits of the appeal without the aid of the receiver-appellee's brief because the record is simple and we can discern the claimed errors without the aid of the receiver's response brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) ("if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal"). As previously noted, for its part, the City filed a letter with the clerk of the Appellate Court, First District, stating that it would not be filing a brief in this appeal.

¶ 45 A trial court's decision to appoint a receiver is reviewed under the abuse of discretion standard. *De Kalb Bank v. Purdy*, 166 Ill. App. 3d 709, 716 (1988). The "appointment of a receiver is an equitable remedy not dependent upon any statute and rests within the discretion of the trial court." *Witters v. Hicks*, 335 Ill. App. 3d 435, 446 (2002). MRR acknowledges this standard of review but asserts that we should review *de novo* the circuit court's ruling on its motion to remove the receiver because the underlying facts are not in dispute. MRR asserts that it does not dispute the circuit court's factual findings that Jones did not own CHRG, that the sale of the Harvard property did not occur, or that the Harvard property was a separate property from the Pittsfield Building. MRR further asserts, that even under an abuse of discretion standard, the court's refusal/failure to remove the receiver was improper. We agree.

¶ 46 A trial court is considered to have abused its discretion only where no reasonable person would take the view it adopted. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). Further, a trial court abuses its discretion when it "acts arbitrarily and fails to employ conscientious judgment and ignores recognized principles of law." *Castro v. Brown's Chicken & Pasta, Inc.*, 314 Ill. App. 3d 542, 554 (2000).

¶ 47 A trial court may appoint a receiver "based on its equity jurisdiction, to secure and preserve property for the benefit of all concerned, so that the property might be subjected to such an

order as the court might render." *Heritage Pullman Bank v. American National Bank & Trust Co. of Chicago*, 164 Ill. App. 3d 680, 687 (1987). "The power to appoint a receiver is most usually called into action either to prevent fraud, save the subject of litigation from material injury, or rescue it from threatened destruction." *Compton v. Paul K. Harding Realty Co.*, 6 Ill. App. 3d 488, 497-98 (1972).

¶ 48　　A receiver is considered an officer of the court that appointed him. *Witters*, 335 Ill. App. 3d at 446. A receiver is "an indifferent person between the parties" and is appointed by the court on behalf of all parties. *Compton*, 6 Ill. App. 3d at 498. Further, a receiver owes fiduciary duties to the parties in the litigation. See *PSL Realty Co. v. Granite Investment Co.*, 76 Ill. App. 3d 978, 995-96 (1979), *aff'd in part, rev'd in part*, 86 Ill. 2d 291 (1981); *City of Chicago v. Hart Building Corp.*, 116 Ill. App. 2d 39, 50-51 (1969). Our supreme court has stated that a receiver "must not permit his personal interests to in anywise conflict with his duty" as a receiver and "can make no profit out of his trust other than the compensation which the court may allow him under the law." *Ravlin v. Chicago, Aurora & De Kalb R.R. Co.*, 297 Ill. 130, 144 (1921). As an officer of the court, a receiver holds property entrusted to him *in custodia legis* and must be fair and frank in all of his dealings with the court. *Hart Building Corp.*, 116 Ill. App. 2d at 51.

¶ 49　　Moreover, "[c]omplete loyalty" is considered "a fundamental duty of a receiver and nothing less than that is acceptable." *PSL Realty Co.*, 76 Ill. App. 3d at 995. The duty of loyalty for a receiver has been described as follows:

> " 'Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. *** Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.' " *Id.* at 995-96 (quoting *Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928)).

Further, as a fiduciary, a receiver "owes a duty of loyalty to the person or entity for whom the fiduciary is acting." *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1008 (2010). "One of the functions of this duty of loyalty is to impose an affirmative obligation to disclose certain information that falls within the scope of the fiduciary relationship." *Id.*

¶ 50　　In addition, the rules of the circuit court of Cook County specifically address a receiver's duties as an officer of the court. Rule 8.1 states that an appointment of a receiver shall not be granted to an individual or to a corporation having a principal officer who "stands in any relation to the subject of the controversy that would tend to interfere with the impartial discharge of his duties as an officer of the court." Cook County Cir. Ct. R. 8.1(a)(iv) (July 1, 1976).

¶ 51　　Applying these principles here, we conclude that the court abused its discretion when it denied MRR's motion to remove the receiver. We cannot find that the receiver could be impartial or carry out his fiduciary duties to the parties in the litigation due to the receiver's other business relationship with another party in the case from which the receiver could have earned a substantial profit and which was not initially disclosed to the circuit court.

¶ 52    The record shows that Gong owned Jewellery Tower and the court appointed Jones Receiverships, LLC, as general receiver to manage Jewellery Tower's portion of the Pittsfield Building. After the appointment, the receiver became involved in the sale of the Harvard property owned by Gong's entity. In fact, the receiver acknowledged in the circuit court that, after the receiver was appointed, Gong's attorney in Canada contacted Jones and requested that he sell the Harvard property. The receiver further acknowledged that he ultimately referred Gong to CHRG, which was owned by Jones's wife, and that CHRG entered into a listing agreement with Gong for the Harvard property. Further, Gong requested CHRG for the Harvard property sale because of Jones's role as receiver for the Pittsfield Building. Indeed, an affidavit from Gong's attorney stated that "we chose CHRG because of their affiliations with Courtney Jones, the appointed Receiver." The listing agreement for the Harvard property provides that CHRG was the broker for the property, Jones's wife was the sales associate, the purchase price was $30 million, and the broker would get a 15% commission from a sale of that property. The record also shows that, even though Jones was not personally listed as the broker for the listing, Jones was involved in the sale. Jones's wife owned CHRG, and Gong's attorney's affidavit indicates that Jones prepared a bid package for the sale of the property. During the receivership, the receiver had a separate financial interest and relationship with Gong, another party to this action, to sell Gong's other property, and the receiver could have received $4.5 million from a sale of that property.

¶ 53    In addition, the record shows that the receiver did not disclose his involvement with Gong and the Harvard property listing to the circuit court until after MRR filed its motion to remove the receiver. Although the record contains an affidavit of independence from Jones dated February 14, 2020, the affidavit is not file stamped with the clerk of the circuit court, and there is nothing in the record to show that the circuit court ever received this affidavit until the day before the November 19, 2020, hearing on the motion to remove the receiver. Moreover, MRR asserts that it sent two letters to the receiver's attorney in August 2020 to inquire about the receiver's involvement with Gong's Harvard property and the receiver's affidavit of independence, but the receiver's attorney never responded. As noted above, the receiver did not file a response brief on appeal to dispute these statements.

¶ 54    Based on this record, we find that the receiver's relationship with the sale of Gong's Harvard property during the receivership, which was not initially disclosed to the circuit court, was a relationship that tended to interfere with the receiver's ability to impartially discharge his duties as an officer of the court. See *id.* (an appointment of a receiver shall not be granted to an individual or to a corporation having a principal officer who "stands in any relation to the subject of the controversy that would tend to interfere with the impartial discharge of his duties as an officer of the court"). Further, as previously discussed, as a court-appointed receiver, the receiver owed fiduciary duties and loyalty to all the parties in the litigation and could not allow his personal interests to conflict with his duty of receiver. Here, the receiver's financial interest in the sale of another party's other property created a conflict of interest and necessarily affected the receiver's ability to fulfill his fiduciary duties to all parties involved in the litigation.

¶ 55    Further, as an officer of the court who owed fiduciary duties to all parties involved in the litigation, the receiver should have informed the court and all other parties about its role in the sale of Gong's Harvard property when the receiver first became involved. See *Hart Building Corp.*, 116 Ill. App. 2d at 51 (where the appointed receiver acquired receivership property

- 11 -

ownership for his own personal benefit during the receivership without disclosing it to the circuit court, the reviewing court stated that the receiver's "duties as receiver required that he act fairly and frankly with the court" and that, "[i]nstead of secretly acquiring title, [the receiver] was duty-bound to first inform the court of his intentions and ask its permission after serving notice on all other parties interested in the receivership proceedings").

¶ 56 Accordingly, based on the foregoing, we conclude that the court abused its discretion when it denied MRR's motion to remove the receiver. We therefore reverse the circuit court's ruling that denied MRR's motion to "Remove Jones Receiverships, LLC as Receiver for Undisclosed and Improper Conflict of Interest, to Enjoin Jones Receiverships from Taking Further Actions and to Appoint New Receiver." We direct the circuit court to order the appointment of a new receiver for Jewellery Tower's portion of the Pittsfield Building.

¶ 57 Further, we note that, when the court issued its ruling, it concluded there was no conflict and stated that Jones's activities did "not arise to a level of conflict that you want to make it out to be." It also stated that "[t]his is not a direct activity related to the property where he has a financial gain," Jones was not an owner of CHRG, there was "no direct financial gain with regard to Pittsfield where Mr. Jones is the receiver," the Harvard property "transaction did not occur," there was "no financial benefit" to his wife, and the "information that he submitted was for the government, not for Mr. Gong." The court however did not provide an informed analysis regarding how the receiver's financial interest in the sale of another party's other property, from which he and his wife could have earned $4.5 million, did not affect the receiver's duty of loyalty and ability to be impartial and fulfill his fiduciary duties to all parties as a receiver and an officer of the court.

¶ 58 ### III. CONCLUSION

¶ 59 Based on the foregoing, the circuit court abused its discretion when it denied MRR's motion to remove the receiver. We therefore reverse the portion of the circuit court's November 19, 2020, order that denied MRR's motion to "Remove Jones Receiverships, LLC as Receiver for Undisclosed and Improper Conflict of Interest, to Enjoin Jones Receiverships from Taking Further Actions and to Appoint New Receiver." We direct the circuit court to order the receiver to file a final report pursuant to circuit court of Cook County Rule 8.5(a). See Cook County Cir. Ct. R. 8.5(a) (July 1, 1976). We direct the circuit court to order the appointment of a new receiver.

¶ 60 Reversed and remanded with directions.