2021 IL App (1st) 201189-U

SIXTH DIVISION
July 23, 2021

No. 1-20-1189

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17 M1 401501 |
| JEWELLERY TOWER, LLC; GLOBAL DISASTER RECOVERY, INC.; USA WATER AND FIRE RESTORATION, INC.; PD LENDER, LLC; ADAM DAVID PARTNERS 1, LLC; LAWRENCE A. BRADI; VALERIO DEWALT TRAIN ASSOCIATES, INC.; and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) | Honorable Patrice Ball Reed, |
| Defendants, | ) ) | Judge Presiding. |
| (MRR 55 Washington Owner LLC, Defendant-Appellant; Courtney Jones, Jones Receiverships, LLC, Court Appointed Receiver, Appellee). | ) ) ) ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

¶ 1     *Held:*  The circuit court abused its discretion when it denied appellant's motion to compel the receiver to immediately obtain insurance; reversed.

**ORDER**

¶ 2        Defendant, MRR 55 Washington Owner LLC (MRR), appeals from the circuit court's interlocutory order that denied its motion to compel the court appointed receiver, Jones Receiverships, LLC, to immediately obtain insurance. On appeal, MRR contends that the court erred when it denied MRR's motion to compel the receiver to immediately obtain insurance and concluded that the receiver, as a general receiver, did not stand in the owner Jewellery Tower's shoes such that the receiver was not subject to Jewellery Tower's insurance requirements set forth in the governing documents for the building at issue.

¶ 3        Initially, we note that the receiver did not file a response brief in this appeal. In May 2021, we entered an order that stated that we were taking the case on appellant's brief only. The City of Chicago filed a letter with the clerk of the Appellate Court, First District, that stated that the City would not be filing a brief in this appeal. No other parties in this action have filed anything with this court in this appeal.

¶ 4        We also note that in case No. 1-20-1352, MRR appealed from the circuit court's interlocutory order that denied its motion to remove Jones Receiverships, LLC, as receiver based on an undisclosed and improper conflict of interest. On July 16, 2021, we issued an opinion in *City of Chicago v. Jewellery Tower, LLC,* 2021 IL App (1st) 201352, that reversed the circuit court's order that denied MRR's motion to remove the receiver and ordered the court to appoint a new receiver.

¶ 5                                  I. BACKGROUND

¶ 6        As previously stated, we issued an opinion in a related case, *City of Chicago v. Jewellery Tower*, *LLC*, 2021 IL App (1st) 201352. We will repeat the facts from that opinion that are necessary for an understanding of the background and issues in this appeal.

¶ 7        This action arises out of a complaint filed in 2017 by the City of Chicago (City) against the owners of a building located at 55 East Washington Street in Chicago (Pittsfield Building) for building code violations. The defendant-owners related to this appeal are MRR and Jewellery Tower. According to MRR's brief on appeal, MRR owns floors 13-21, which are residential in nature, as well as portions of the lobby and certain elevators. Jewellery Tower owns portions of the lobby and floors 1-12 and 22-43. Other than some retail space on the first floor, the sections owned by Jewellery Tower are vacant. The exterior of the building consists largely of terra cotta masonry.

¶ 8        The City's allegations of building code violations related to the interior and exterior of the Building and included allegations that the defendant-owners failed to, *inter alia*, maintain the building or structure in a structurally safe and stable condition, failed to maintain the exterior walls that have washed out terra cotta, and failed to maintain the exterior walls of the building or structure free from holes, breaks, rotting timbers, and any other conditions that might admit rain or dampness to the walls. Pursuant to a recorded declaration of covenants, conditions, restrictions and easements for the Pittsfield Building (Declaration), MRR is responsible for paying a certain percentage of various costs that Jewellery Tower must pay for services for the Building, including maintaining the façade.

¶ 9        In December 2017, Xiao Hua Gong (a.k.a. Edward Gong), who owned Jewellery Tower, was charged with fraud and money laundering in Canada. In October 2018, the United States District Court for the District of Columbia entered an order that stated that criminal proceedings were pending against Gong in the Ontario Superior Court of Justice, which had issued three restraining orders on December 19, 2017, providing that certain properties owned by Gong in the United States, including the Pittsfield Building, were subject to forfeiture under

Canadian law. Pursuant to an international treaty, the United States District Court's order enforced the restraining orders issued by the Ontario Superior Court of Justice and restrained Gong's portion of the Building and other properties owned by Gong in the United States.

¶ 10                              A. Circuit Court's Appointment of a Receiver

¶ 11        In January 2020, the circuit court granted the City's motion to appoint a receiver pursuant to section 11-31-2 of the Illinois Municipal Code (65 ILCS 5/11-31-2) (West 2018)) and requested that the parties submit recommendations for the receiver. Jewellery Tower objected to appointing a receiver, asserting that the City failed to establish that there were dangerous and hazardous conditions at the Building. Jewellery Tower also stated that if the court appointed a receiver, then its requested receiver was "Courtney Jones."

¶ 12        On January 23, 2020, the court entered an order appointing "Jones Enterprises" as general receiver for Jewellery Tower's portion of the Pittsfield Building. On March 5, 2020, the court entered an order clarifying its January 23, 2020, order that appointed the receiver, and stating as follows. Dangerous and hazardous conditions existed at the Pittsfield Building that jeopardized the health and safety of the public and citizens of the City due to, *inter alia*, leaking water pipes and cracked and broken windows throughout the upper floors of the Building that could fall, strike, and impale pedestrians. Due to these conditions, the Pittsfield Building failed to meet the minimum standards of health and safety required by the City's municipal code and the threat of harm would continue without the appointment of a receiver. The court's order also clarified the receiver's name and stated that all authority previously granted to Jones Enterprises would be granted to Jones Receiverships, LLC.

¶ 13        In this same March 5, 2020, order, the court authorized the receiver to, *inter alia*, maintain possession, custody, and control of the Building to prevent any further damage and

stated that the receiver's powers and duties to repair and stabilize the building would maintain the *status quo* of the Building. The order stated that the receivership included "all floors and improvements listed on the deed, erected or standing on the real property, and all appurtenances, liens, easements, personal property, equipment, *** licenses and rights attached or being to the real property, and with all rents, issues, income and rights attached or belonging to the real property, and with all rents, issues income and profits of the foregoing for the units owned by Jewellery Tower, LLC." The order also stated that the receiver was authorized to "obtain insurance, if needed, in such amounts, with such companies and to insure against such risks, as Receiver deems necessary." It ordered Jewellery Tower to turn over to the receiver "insurance of all types of the Property" and "insurance of all types for Owner or other related to the Property."

¶ 14       On June 2, 2020, the Ontario Superior Court of Justice entered an order that modified its previous restraining order on the Pittsfield Building to permit the receiver to take over the management of Gong's interest in the Pittsfield Building to the limited extent necessary to do work on it. The order stated that the restraining order did not affect the ability of any receiver, including Jones Receiverships, LLC, to discharge its court approved duties, including collecting rent and issuing receiver certifications and liens for repair or improvements to the Pittsfield Building.

¶ 15       On July 9, 2020, the circuit court entered an order that stated that the receiver was authorized to "[s]ecure appropriate building insurance" and that the receiver's "previous authority to secure insurance is increased up to $650,000."

¶ 16       MRR's Motion to Compel Receiver to Immediately Obtain Insurance

¶ 17       In August 2020, MRR filed a motion to compel the receiver to immediately obtain insurance. It asserted that the Pittsfield Building was vertically subdivided into two parcels, with

Jewellery Tower owning the retail/office property on floors 1-12 and 22-38 and MRR owning the residential property on floors 13-31 as well as certain common areas and elevators. MRR argued that when the court appointed the receiver, it appointed the receiver as a general receiver and that, therefore, the receiver stepped in the shoes of the owner, Jewellery Tower, and took control over the retail/office property of the Pittsfield Building subject to all preexisting liens and encumbrances, including the Building's Declaration of Covenants, Conditions, Restrictions and Easements of the Pittsfield Building (Declaration), which governed the respective rights and obligations of the owners of the Pittsfield Building. The Declaration states that "Retail/Office Parcel" includes floors 2-12 and floors 22-38, which are owned by Jewellery Tower. MRR asserted that pursuant to the court's July 9, 2020, order, the receiver was required to "[s]ecure appropriate building insurance" and was authorized to spend up to $650,000 to secure it. MRR contended that the receiver did not procure adequate insurance to protect the Building nor the receivership or MRR's interest in the Building and that, therefore, the receiver did not comply with the intent of the court's July 9, 2020, order or the Pittsfield Building's Declaration.

¶ 18        MRR attached to its motion the Declaration, which was recorded with the Cook County Recorder of Deeds in 2008, and asserted that article nine of the Declaration governed insurance and the types and policy limits owners were required to obtain to protect the Pittsfield Building. MRR cited sections 9.1(a), 9.1(b), and 9.5 of the Declaration. Section 9.1(a) states:

> "Each Owner shall procure, maintain and keep, at its sole cost and expense, its respective portion of the Building (including without limitation the foundation) insured under an 'all risk' or 'special form' (whichever is broader) property policy for an amount not less than one hundred percent (100%) of the full insurable replacement cost thereof.

Such policy shall include, if applicable, flood insurance and boiler and machinery insurance insuring against loss or damage to that portion of the Total Property owned by that Owner resulting from any accident covered under a standard boiler and machinery insurance policy."

Section 9.1(b) states:

"The Owner of the Retail/Office Property shall separately maintain and carry, at its sole costs and expense, Commercial General Liability Insurance, covering claims for personal and bodily injury and property damage occurring in, on, under, within, upon or about the Retail/Office Property***for limits of not less than $1,000,000 per occurrence with a general policy aggregate of $2,000,000.00 for personal and bodily injury or property damage with at least an additional $5,000,000 umbrella coverage. The Commercial General Liability Insurance policy shall be endorsed to cover cross-liability claims of one insured against another, and shall contain a 'severability of interest' endorsement which shall preclude the insurer from denying the claim of one insured on account of the negligent acts of another insured."

Section 9.5 states: "Certificates delineating all forms of coverage and endorsements required hereunder shall be delivered to each Owner.***Copies of such policies shall be delivered to each Owner upon request."

¶ 19       MRR stated in its motion that on July 17, 2020, the receiver provided MRR and the City with a one-page Certificate of Liability Insurance as proof of insurance. The one-page certificate, which MRR attached to its motion, was dated July 17, 2020, and provided that Cincinnati Specialty Underwriter's Insurance Company was the insurer affording coverage and Jones Receivership, LLC was the insured. The certificate indicated that the type of insurance was

"Commercial General Liability," with limits of $1 million per occurrence and $2 million general aggregate.

¶ 20     MRR argued that the receiver's certificate of insurance failed to provide an address of the property sought to be insured and did not provide for additional insureds. MRR argued that the receiver failed to comply with the Declaration because it failed to provide evidence that the policy fully insured 100% of the replacement costs of the Retail/Office property as well as evidence of boiler and machinery coverage, which was required under section 9.1. It also argued that the receiver failed to provide evidence of a $5 million umbrella policy, which was required under section 9.2. MRR asserted that general liability insurance covers third party risks for injuries of third parties who are injured as a result of conditions at the Pittsfield Building, but that it did not cover the Pittsfield Building's owner, or the receiver, for the replacement value in the event that the Pittsfield Building was damaged or destroyed by casualties. MRR argued that the receiver breached its fiduciary duty to the court and MRR because it failed to procure sufficient insurance for the Pittsfield Building.

¶ 21     The receiver did not file a written response to MRR's motion.

¶ 22     Hearing on MRR's Motion to Compel the Receiver to Immediately Obtain Insurance

¶ 23     At the October 7, 2020, hearing on MRR's motion to compel the receiver to immediately obtain insurance, MRR's counsel argued that the receiver stepped into the shoes of the owner and, therefore, was acting as an owner and bound by the owner's insurance requirements set forth in the Declaration. The receiver's counsel argued that the receiver was appointed for Gong's unit of the Pittsfield Building, not as a general receiver for the entire Building, and that the receiver was only required to secure insurance for Gong's portion. The receiver's counsel stated that the receiver "obtained a minimum level of insurance that would

8

basically cover the work that the [r]eceiver is doing and would give some coverage to the area" and there were "never any orders***placing us in the shoes of the owner."

¶ 24    In response to the receiver's counsel's argument that there were never any orders placing the receiver in the shoes of the owner, MRR's counsel repeated his argument that the receiver stepped into the shoes of the owner and was bound by the Declaration. The court then responded as follows: "No, I would disagree with that. I've never had a Receiver step into the shoes of the owner. They've only been required to maintain the buildings or do repairs, and so they don't step into the shoes of the owner. They have no ownership with regard to the property."

¶ 25    As for the City's position, the City's counsel asserted that the court appointed the receiver as general receiver for Gong's property "so they step into the shoes of Gong" and the receiver was "not some separate entity." The City's counsel stated that Gong could not "act because the entire property is in the possession of the [g]eneral [r]eceiver" and that, as the general receiver, the receiver had "all the powers of the owner." MRR's counsel agreed and stated that Gong was "no longer in the picture" because the receiver was appointed as general receiver.

¶ 26    We note that during the hearing, Jacob Handelman, who was working to secure insurance for Jewellery Tower, told the court that originally the receiver had requested $600,000 to spend on insurance but that the actual amount needed to buy insurance and to protect Gong was $30,000.[1] The City's counsel requested that the receiver submit something in writing regarding this change in costs, after which the court ordered the receiver's counsel to "put

---

[1] The report of proceedings does not specifically state Jacob Handelman's position, but the transcript shows that he was working with the receiver to secure insurance for Jewellery Tower's portion of the Building.

something in writing" within 14 days "explaining why it's been changed from the cost would have been 600,000 and now 30,000."

¶ 27        Following argument, the court denied MRR's motion to compel the receiver to immediately obtain insurance. In doing so, the court concluded that it disagreed with MRR's "interpretation that the [r]eceiver is now an owner." The court stated that "in terms of what I've seen in the [D]eclaration, it is Mr. Gong's responsibility to comply with that [D]eclaration" and that Gong was "still required to do so because he is still the owner." The court ordered Gong to obtain the insurance set forth in the Declaration. The court also stated that the receiver acquired liability insurance and initially asked to spend $600,000, which was not the cost of what they actually needed. The court requested the receiver's counsel to explain in writing the difference in the costs and what was covered by the insurance policy the receiver actually obtained.

¶ 28        The court also entered a written order following the October 7, 2020, hearing, in which it stated that it denied MRR's motion, the receiver "secured some insurance", and the insurance that was required under the Declaration was "the responsibility of the owner, not the general receiver." The court ordered the receiver to provide the parties the entire insurance policy that it had secured. The court also ordered the receiver to provide within 14 days a written assessment of the insurance at the property and to justify the reduction of the cost of the insurance from the previously authorized $660,000 to $30,000.[2] The court ordered Jewellery Tower to secure insurance required under the Declaration within 30 days.

---

[2] At the October 7, 2020, hearing the parties referred to $600,000 as the amount the court had originally authorized the receiver to spend. As previously discussed, on July 9, 2020, the court entered an order that authorized the receiver to "[s]ecure appropriate building insurance" and that stated that the receiver's "previous authority to secure insurance is increased up to $650,000."

¶ 29    Pursuant to Illinois Supreme Court Rule 307(a)(1), (a)(3) (eff. Nov. 1, 2017), MRR filed this instant interlocutory appeal of the circuit court's order that denied its motion to compel the receiver to immediately obtain insurance.

¶ 30        MRR's Motion to Remove Jones Receiverships, LLC as Receiver

¶ 31    We note that at the time MRR filed its notice of appeal in this case, MRR had another pending motion with the circuit court that requested the court to remove Jones Receiverships, LLC as receiver based on an undisclosed and improper conflict of interest. As previously discussed, MRR filed an interlocutory appeal of the circuit court's order that denied MRR's motion to remove the receiver. On July 16, 2021, we issued an opinion in that case, *City of Chicago v. Jewellery Tower, LLC,* 2021 IL App (1st) 201352. We reversed the circuit court's denial of MRR's motion to remove the receiver and ordered the circuit court to appoint a new receiver.

¶ 32            Documents Included in MRR's Appendix on Appeal

¶ 33    We will briefly summarize certain documents included in MRR's appendix on appeal, but which were not included in the record.

¶ 34    MRR asserted in its brief on appeal that there were several motions pending with the circuit court at the time it filed its notice of appeal, including a motion filed by the receiver entitled "motion for approval of general liability insurance policy." In the receiver's motion, the receiver asserted that on June 11, 2020, the circuit court had authorized the receiver to spend $45,000 on insurance, after which the receiver contacted Jewellery Tower's previous insurer and learned that all of the previous insurance policies held by Gong had been cancelled, with the exception of the boiler and machinery insurance. The receiver asserted that, at that time, it requested quotes for all of the policies previously held by Gong, which included an umbrella

policy. The receiver stated that the quotes it received were greater than $45,000 and that at the July 9, 2020, court date, it informed the court that it would need additional funds to secure the insurance policy. The receiver stated that after the July 9, 2020, court date, it met with the insurance company and determined that it was not necessary for the receiver to carry all of the same insurance policies that Gong had. The receiver stated that "[b]ased upon recommendation," the receiver purchased liability insurance through Cincinnati Specialty Property Liability for $23,000, which covered liability insurance in the event of an accident or injury for $1 million per incident and $2 million general aggregate. The receiver argued that under the Declaration there was no obligation for Gong, or the receiver, to purchase insurance for the entire Pittsfield Building and the policy it procured complied with the requirements of the Declaration. The receiver requested the court to approve its purchase of the general liability insurance policy. To its motion, the receiver attached the "Certificate of Liability Insurance" for the policy it procured, which was included on the record on appeal and described above.

¶ 35        In MRR's appendix to its brief, it also included its response to the receiver's motion for approval of general liability insurance that it filed in the circuit court. In MRR's response, MRR argued that the receiver did not adhere to the court's October 7, 2020, order because it only provided the "Certificate of Liability Insurance" document and not the entire insurance policy as the court had ordered. MRR also asserted that pursuant to the court's October 7, 2020, order, the receiver was required to provide an analysis as to why the expected expense for insurance decreased from $660,000 to $30,000, but that the receiver failed to do so. MRR contended that the insurance the receiver procured for the Pittsfield Building was "absurdly deficient" and the receiver had only spent $23,000 even though the court authorized the receiver to spend

$650,000. MRR continued to argue that the receiver had not obtained insurance required under the Declaration, including adequate property insurance and umbrella coverage of $5 million.

¶ 36    Also included in MRR's appendix on appeal, is the circuit court's November 19, 2020, order that, among other things, granted the receiver's motion for approval of general liability insurance. The court noted that the receiver had provided the parties a link to the policy using the Zoom chat feature and ordered the receiver to follow up by sending the link to the policy to all parties via email.

¶ 37                                    II. ANALYSIS

¶ 38    On appeal, MRR contends that the court erred when it found that the receiver, as a general receiver, did not stand in the owner's shoes for purposes of following the insurance requirements set forth in the Declaration. MRR asserts that the receiver stands in the shoes of the owner, Jewellery Tower, and takes control over Jewellery Tower's potion of the Pittsfield Building subject to all preexisting liens and encumbrances, including the Declaration. It argues therefore that the court erred when it did not compel the receiver to obtain the insurance required for owners in the recorded Declaration, including umbrella and property policies. MRR asserts that the court ignored established case law and did not provide any reasons or bases for requiring the receiver to obtain commercial general liability insurance but not umbrella or property insurance, which were all types of insurance required in the Declaration.

¶ 39    MRR further argues that the circuit court's order requiring Jewellery Tower to obtain the insurance required in the Declaration did not relieve the receiver of its duty to obtain the insurance required, including umbrella and property insurance, because as a court-appointed general receiver, the receiver, not Jewellery Tower, must act pursuant to the recorded Declaration. MRR asserts that the assets of Jewellery Tower's owner, Gong, had been frozen

pursuant to a restraint order in Canada that was recognized by the United States District Court such that Gong was unable to comply with the court's order. MRR notes that Gong had been in contempt since January 23, 2020, the date the receiver was appointed, and was under indictment in Canada.

¶ 40        Following the filing of MRR's opening brief, on February 24, 2021, MRR filed a motion to set case to ready status and for adjudication. MRR stated that the receiver's response brief was due on December 11, 2020, but that the receiver had not yet filed an appearance or a response brief. MRR asserted that MRR obtained the insurance required under the Declaration and that Jewellery Tower's portion of the Pittsfield Building, which is under the receiver's control and management, "is completely unprotected from any type of casualty." MRR asserted that because MRR shares portions of the Pittsfield Building, including the exterior, any loss to those shared portions will fall disproportionately on MRR. MRR stated that since the time it filed its opening brief, there were additional orders entered in the ancillary proceedings in Canada and the United States District Court for the District of Columbia. It asserted that none of those orders prevents the Receiver from acting and that the previous restraint order on Jewellery Tower's portion of the Pittsfield Building had been lifted pursuant to a new order in the Canadian court, which makes it imperative that the issue of insurance be decided as soon as possible.

¶ 41        When the receiver had still not filed a response or appearance in this court as of May 7, 2021, this court entered an order stating that we would take the case on appellant's brief only.

¶ 42        As of the date of the filing of this order, the receiver has not filed an appearance or response. We may decide the merits of the appeal without the aid of the receiver-appellee's brief because the record is simple, and we can discern the claimed errors without the aid of the receiver-appellee's response brief. See *First Capitol Mortgage Corp. v. Talandis Construction*

14

*Corp.*, 63 Ill. 2d 128, 133 (1976) ("if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal"). As previously noted, as for the City's position, the City filed a letter with the clerk of the  Appellate Court, First District, stating that did not file a brief on the instant issue in the circuit court and that it would not be filing a brief in this appeal.

¶ 43        The "appointment of a receiver is an equitable remedy not dependent upon any statute and rests within the discretion of the trial court." *Witters v. Hicks*, 335 Ill. App. 3d 435, 446 (2002). When a circuit court is required to exercise its equitable powers with respect to a receiver, as here, we review a circuit court's ruling under the abuse of discretion standard. *REEF-PCG, LLC v. 747 Properties, LLC*, 2020 IL App (2d) 200193, ¶ 32 (where the appellate court reviewed the trial court's decision to issue receiver certificates and prioritize them over liens, the court stated it would review the issue under the abuse of discretion standard, noting the standard was appropriate "when a trial court is called upon to exercise its equitable powers" or "make a judgment call"). A court is considered to have abused its discretion "if its decision is arbitrary, fanciful, or unreasonable." *Mendez v. Town of Cicero*, 2016 IL App (1st) 150791, ¶ 15. Further, a court abuses its discretion if it acted "arbitrarily without the employment of conscientious judgment, exceeded the bounds of reason and ignored recognized principles of law or if no reasonable person would take the position adopted by the court." (Citation omitted.) *Popko v. Continental Casualty Co.*, 355 Ill. App. 3d 257, 266 (2005).

¶ 44        MRR acknowledges this standard of review for the circuit court's ruling on its motion to compel the receiver to immediately obtain insurance. However MRR asserts that we should review *de novo* the circuit court's ruling because the underlying facts are not in dispute and the court's decision is based on a purely legal analysis. See *Cohen v. Blockbuster Entertainment,*

*Inc.*, 351 Ill. App. 3d 772, 776 (2004) (where the circuit court based its ruling on the undisputed facts, the appellate court reviewed the arbitration issue *de novo*, noting that, where the underlying facts are not in dispute, the circuit court's decision is based upon a purely legal analysis). MRR asserts that it does not dispute the court's factual finding that the receiver obtained some insurance. It argues that the issue regarding whether the receiver steps into the owner's shoes such that the receiver is required to follow the requirements set forth in the Building's Declaration is purely a legal issue. Under a *de novo* standard of review, "we perform the same analysis that a trial judge would perform." *Khan v. Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 63.

¶ 45 Although MRR asserts that we should review *de novo* the circuit court's ruling because the facts are undisputed and the circuit court's decision is based on a purely legal issue, it also asserts that the court's decision ignored established case law and did not provide reasons for the decision. A circuit court's "failure to apply correct legal principles does not preclude us from reviewing for an abuse of discretion." *Mendez v. Town of Cicero*, 2016 IL App (1st) 150791, ¶ 16. Further, a "circuit court abuses its discretion when it makes an error of law." *Cable America, Inc. v. Pace Electronics*, *Inc.,* 396 Ill. App. 3d 15, 24 (2009).

¶ 46 We conclude that under either standard of review, the court erred when it denied MRR's motion to compel the receiver to immediately obtain insurance.

¶ 47 A circuit court "appoints a receiver, based on its equity jurisdiction, to secure and preserve property for the benefit of all concerned, so that the property might be subjected to such an order as the court might render." *Heritage Pullman Bank v. American National Bank & Trust Co. of Chicago*, 164 Ill. App. 3d 680, 687 (1987). "The power to appoint a receiver is most usually called into action either to prevent fraud, save the subject of litigation from material

16

injury, or rescue it from threatened destruction." *Compton v. Paul K. Harding Realty Co.*, 6 Ill. App. 3d 488, 497-98 (1972). A receiver is considered an officer of the court that appointed him. *Witters*, 335 Ill. App. 3d at 446.

¶ 48    Further, a receiver owes fiduciary duties to the parties in the litigation. See *PSL Realty Co. v. Granite Investment Co.*, 76 Ill. App. 3d 978, 995-96 (1979), *aff'd in part, rev'd in part,* 86 Ill. 2d 291 (1981); *City of Chicago v. Hart Building Corp.*, 116 Ill. App. 2d 39, 50-51 (1969). With respect to a receiver's duty with insurance, the Corpus Juris Secundum section on insurance for receivers states as follows:

"In view of the general duty of a receiver to protect and preserve property of the estate coming into its hands, it cannot be doubted that under some circumstances a receiver would be derelict in his or her duty if the receiver did not cause property in his or her possession to be insured against loss or damage." 75 C.J.S. Receivers § 170.

In addition, under the Illinois Mortgage Foreclosure Law (IMFL), with respect to insurance, the receiver has the power and authority to "insure the mortgaged real estate against loss by fire or other casualty" and "shall maintain the existing casualty and liability insurance required in accordance with the mortgage or applicable to the real estate and other property subject to the mortgage at the time the receiver took possession." 735 ILCS 5/15-1704(b)(3), (c)(1) (West 2018). Further, under the IMFL, a receiver must "manage the mortgaged real estate as would a prudent person, taking into account the effect of the receiver's management on the interest of the mortgagor." 735 ILCS 5/15-1704(c) (West 2018).

¶ 49    Here, based on the record before us, we cannot find that the insurance secured by the receiver was sufficient to protect and preserve the Pittsfield Building. On July 9, 2020, the circuit court ordered the receiver to "[s]ecure appropriate building insurance" and authorized the

17

receiver to spend up to $650,000 to do so. The Declaration, which governs the Pittsfield Building, requires owners such as Jewellery Tower to obtain commercial general liability insurance as well as property and umbrella insurance policies. Specifically, with respect to property insurance, section 9.1(a) provides that each owner shall procure and maintain, "at its sole cost and expense its respective portion of the Building (including without limitation the foundation) insured under an 'all risk' or 'special form' (whichever is broader) property policy for an amount not less than one hundred percent (100%) of the full insurance replacement cost thereof." With respect to commercial general liability and umbrella policies, section 9.1(b) requires each owner of the retail/office property to separately maintain and carry "Commercial General Liability Insurance, covering claims for personal and bodily injury and property damage occurring in, on, under, within, upon or about the Retail/Office Property***for limits of not less than $1,000,000 per occurrence with a general policy aggregate of $2,000,000.00 for personal and bodily injury or property damage with at least an additional $5,000,000 umbrella coverage."

¶ 50     Although the Declaration requires commercial general liability, property, and umbrella insurance policies for owners such as Jewellery Tower, the record shows that the receiver only secured commercial general liability insurance. The record contains a one-page certificate of liability form, dated July 17, 2020, which provided that Cincinnati Specialty Underwriters Insurance Company was the insurer, Jones Receivership, LLC was the insured, and the type of insurance procured was "Commercial General Liability," with limits of $1 million per occurrence and $2 million general aggregate. We note that the actual policy is not contained in the record on appeal and the record shows that at the hearing, the parties did not have the actual policy, as after the hearing the court ordered the receiver to provide the parties the entire policy. Further, at the hearing, the receiver informed the court that even though it had initially requested

to spend $600,000 on insurance, it only needed to spend $30,000. Following the hearing, the court ordered the receiver to provide a written explanation regarding why the requested cost of insurance changed from $600,000 to $30,000. The court did not have this written explanation when it issued its ruling, and it is not included in the record on appeal.

¶ 51     Accordingly, based on the record, we cannot find that the receiver secured appropriate insurance to manage, protect, and preserve the Pittsfield Building as it was required to do as a court-appointed receiver. We therefore find that the court abused its discretion when it denied MRR's motion to compel the receiver to immediately obtain insurance, in which it requested the court to order the receiver to secure the insurance required for owners set forth in the Declaration.

¶ 52     Moreover, we note that when the court denied MRR's motion, it found that the receiver did not stand in the shoes of the owner, Jewellery Tower, such that the receiver was not required to secure the insurance set forth in the Declaration. At the hearing, MRR's counsel argued that, as a general receiver, the receiver "stood in the shoes" of the owner, Jewellery Tower. The receiver's counsel disagreed, stating that there were "never any orders***placing us in the shoes of the owner." During the hearing, the court expressly stated that it disagreed with MRR's position and stated "I've never had a Receiver step into the shoes of the owner. They've only been required to maintain the buildings or do repairs, and so they don't step into the shoes of the owner." The court then denied MRR's motion on the bases that the receiver "secured some insurance" and the insurance required under the Declaration was "the responsibility of the owner, not the general receiver."

¶ 53     However, the record shows that neither the receiver nor the court relied on any authority to support the conclusion that a receiver does not stand in the shoes of an owner with

respect to securing appropriate insurance for a property and complying with a property's governing document. In MRR's motion in the circuit court, it argued that the receiver stood in the owner's shoes, but the receiver did not file a written response to MRR's motion. The receiver has also not filed a response in this appeal. Further, at the hearing, neither the receiver nor the court referred to any authority or support for the conclusion that the receiver does not stand in the shoes of the owner for purposes of securing appropriate insurance.

¶ 54　　　　From our research, we did not find any definitive support for the conclusion that a receiver does not stand in the shoes of an owner for purposes of either securing insurance or complying with insurance requirements set forth in a governing document. Rather, we have found support for the conclusion that the receiver has the responsibility to comply with the owner's insurance requirements that are set forth in the existing Declaration.  For example, with respect to receivers appointed in mortgage foreclosure cases, the IMFL requires the appointed receiver to maintain the existing casualty and liability insurance and it grants receivers the power to "insure the mortgaged real estate against loss by fire or other casualty." 735 ILCS 5/15-1704 (b)(3), (c)(1) (West 2018). Section 15-1704(c)(1) of the IMFL states that the receiver "shall maintain the existing casualty and liability insurance required in accordance with the mortgage or applicable to the real estate and other property subject to the mortgage at the time the receiver took possession." 735 ILCS 5/15-1704(b)(3), (c)(1) (West 2018).

¶ 55　　　　Moreover, applying Illinois law, the United States Bankruptcy Court for the Northern District of Illinois has stated that "the receiver holds possession for the court subject to all previously existing equities, legal interests, and liens on the property" (*In re Teknek, LLC*, 343 B.R. 850, 874 (N.D. Ill. 2006)), which provides support for the conclusion that a receiver would also hold the possession of the property subject to any existing insurance requirements applicable

to the property. In addition, the Corpus Juris Secundum section on receivers states that a receiver stands in the shoes of the owner:

> "Generally, a receiver is merely a custodian and in that capacity takes all the property of the debtor which constitutes the subject of the suit, within the jurisdiction of the court. Thus, while a general receiver takes the rights, causes, and remedies which were available to those whose interests the receiver was appointed to represent, *the receiver stands in the shoes of the entity in receivership*, and has no greater right to property than the entity has whose property the receiver was appointed to marshal, or no greater rights in the property than the debtor had, and except as to liens in existence at time of appointment, the receiver holds the property for the benefit of general creditors under the court's direction." (Footnotes omitted.) (Emphasis added.) 75 C.J.S. Receivers § 92.

¶ 56    Accordingly, based on the foregoing, we conclude that with respect to securing appropriate insurance, the receiver must follow the insurance responsibilities of the owner, Jewellery Tower, that are set forth in the Declaration. Further, given that the record does not show that the court relied on any authority when it denied MRR's motion to compel the receiver to immediately obtain the insurance required for owners set forth in the Declaration, we find that the court abused its discretion when it denied MRR's motion on the basis that the receiver did not stand in the owner's shoes for purposes of securing insurance.

¶ 57                              III. CONCLUSION

¶ 58    The circuit court abused its discretion when it denied MRR's motion to compel the receiver to immediately obtain insurance. We therefore reverse the portion of the circuit court's October 7, 2020, order that denied MRR's motion to compel the receiver to immediately obtain

21

insurance. We direct the circuit court to order the receiver to comply with the insurance requirements for owners set forth in the Building's Declaration.

¶ 59        Reversed and remanded with directions.